IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH DIVELY, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| TRANS UNION, LLC, *et al.*, | : | |
| Defendants. | : | No. 11-3607 |

**MEMORANDUM**

PRATTER, J.                                                                                                            JANUARY 25, 2012

Plaintiff Joseph Dively filed this action, alleging violations of the Fair Credit Reporting Act that arose from the alleged inaccurate inclusion of tax liens on credit reports produced by Defendants Trans Union and MDA Lending Solutions (now "DataQuick"). DataQuick has moved to dismiss Mr. Dively's Amended Complaint. After oral argument on January 17, 2012, the matter is ripe for decision.

**BACKGROUND**[1]

Defendant DataQuick is a consumer reporting agency and a reseller of consumer information which takes information furnished by Trans Union, Equifax, and Experian to create tri-merge credit reports for sale to third parties. Plaintiff Joseph Dively complains that Defendants TransUnion and DataQuick inaccurately included two tax liens, which were actually the responsibility of his father (also named Joseph Dively), on his credit report.

More specifically, in December 2010, DataQuick created a tri-merge report concerning the Plaintiff that ascribed the tax liens at issue to him, despite the fact that of the three CRAs

---

[1] The following factual background is drawn from Plaintiff's Amended Complaint and focuses on the facts as they relate to the moving defendant, DataQuick.

from whom DataQuick obtained information, only TransUnion reported the liens.  Mr. Dively alleges that DataQuick did nothing to reconcile this inconsistent reporting of the liens before selling the report to third parties, nor did it perform any investigation to verify the information. He contends that "even a cursory review" of the tax documents would demonstrate that the social security number associated with the liens was not his.  Mr. Dively alleges that the Defendants' reports have been a substantial factor in precluding him from receiving credit offers and opportunities and from receiving the most favorable terms in financing and interest rates, and that he has suffered lost credit opportunities, harm to his credit reputation and credit score, and emotional distress as a result.  He generally alleges that the Defendants' actions were malicious, intentional, willful, reckless, and grossly negligent.

Although his original complaint brought multiple claims under both federal and state law against DataQuick, his Amended Complaint (filed after DataQuick moved to dismiss the original complaint) asserts only one count against DataQuick – for violation of § 1681e(b) of the FCRA. In that one count, he alleges that DataQuick negligently and willfully failed to employ and follow reasonable procedures to assure maximum possible accuracy of his credit report.

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).  Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (alteration in original) (quoting *Conley*, 355 U.S. at 47), the plaintiff

must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *see also Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1323 (2011). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation omitted). An assessment of the sufficiency of a complaint is thus "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85 (3d Cir. 2010) (citations omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must only consider those facts alleged in the complaint and accept all of those allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Twombly*, 550 U.S. at 555 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). Concomitantly, the Court must also accept as true all reasonable inferences that

may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). Nonetheless, the Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citing *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d. 902, 906 (3d Cir. 1997).

**DISCUSSION**

In the Third Circuit, to state a claim under § 1681e(b), a plaintiff must allege:

> (1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry.

*Philbin v. TransUnion Corp.*, 101 F.3d 957, 963 (3d Cir. 1996).[2] The Third Circuit Court of Appeals has yet to settle on the precise burden on the plaintiff as to the second element, i.e., the cause of the inaccuracy being a failure to follow reasonable procedures, which is the only element at issue here. However, the appellate court has cited three possible standards used by other circuits. *See id.* at 964-66. The first test requires a plaintiff to show "some unspecified quantum of evidence" beyond a mere inaccuracy in order to engage the jury on a § 1681e(b) claim, which can include, for example, merely showing inconsistencies between two different reports concerning the plaintiff. The second test would allow the jury to infer unreasonable procedures from any inaccuracy, essentially imposing on defendants an affirmative obligation to

---

[2]   The last two elements are not required if the violation is willful.

prove that their procedures were reasonable, while not formally shifting the burden of proof to the defendant. The third test is akin to the common law *res ipsa loquitur* rule, and allows a defendant to escape trial only if it can prove as a matter of law that it acted reasonably. *Id.*; *see also Cortez v. TransUnion*, 617 F.3d 688, 710 (3d Cir. 2010) (continuing to refuse to choose one of the three possible frameworks).

      DataQuick specifically states that it does not seek to assert that Mr. Dively insufficiently pleaded his claim, but rather argues that he simply cannot state a claim against DataQuick under the facts alleged as a matter of law. DataQuick essentially tries to cut to the chase at this early stage of the case. It claims that as a matter of law, absent prior notice from the consumer of inaccuracies, DataQuick is entitled to rely on the information provided by the three major CRAs, even if only one of those CRAs reports certain information. DataQuick attempts to ascribe to Congress an intention to relieve resellers such as DataQuick from any duty to "reconcile" the reports of the three major CRAs by noting that Congress never imposed a specific duty on resellers to do so and that Congress specifically exempted resellers from a duty to "reinvestigate" consumer disputes when an error is in the source CRA report. *See* 15 U.S.C. § 1681i(f) (relieving resellers from the duty to reinvestigate reported errors that were not made by the reseller itself).

      DataQuick's argument is flawed, in that the only important consideration here is that Congress specifically denotes that resellers *are* CRAs for the purposes of the FCRA, which makes them subject to the § 1681e(b) "maximum possible accuracy" requirement, and that when Congress exempted them from reinvestigation duties, it notably did *not* exempt them from § 1681e(b) requirements or impose different requirements on them under that section. *See Perez v.*

*Trans Union*, 526 F. Supp. 2d 504 (E.D. Pa. 2007) (reseller not exempt from § 1681e(b) duties as a matter of law just because it accurately transcribed and reiterated inaccurate data).  DataQuick cites no case law which distinguishes the duties of resellers under § 1681e(b) from the duties of any other type of CRA.

DataQuick's arguments also rely on several cases which either do not involve a § 1681e(b) claim, are from another jurisdiction, or both.  For instance, it claims that "the Third Circuit held in its analysis of FCRA § 1681e(b) that, in the absence of any notice of an inaccuracy, 'the costs of requiring [CRAs] to go beyond the original source of information as an initial matter outweigh any potential benefits of such a requirement.'" *See* DataQuick Mot. to Dismiss at 5-6.  What DataQuick leaves out is that, far from being a holding, the language from *Cushman v. TransUnion Corp.*, 115 F.3d 220, 224-25 (3d Cir. 1997), quoted by DataQuick can be found in the context of a discussion of an entirely different provision of the FCRA.  Indeed, there was no § 1681e(b) claim discussed in *Cushman*.  Moreover, DataQuick leaves out from its quote a very important phrase that precedes it: "[w]e assume for the sake of argument . . ." *See Cushman*, 115 F.3d at 224-25.

No Third Circuit court has held that a plaintiff must prove that a CRA had notice of an inaccuracy and failed to act before it can be held liable under § 1681e(b).  DataQuick relies almost exclusively on Seventh Circuit law on this point.  *See Sarver v. Experian Info. Solutions*, 390 F.3d 969, 972 (7th Cir. 2004) (upholding grant of summary judgment in defendant's favor: "In the absence of notice of prevalent unreliable information from a reporting lender, which would put [defendant] on notice that problems exist, we cannot find that such a requirement to investigate would be reasonable given the enormous volume of information [defendant]

processes every day."); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994) (affirming district court's grant of defendants' motions to dismiss and holding that "as a matter of law, a credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a court's Judgment Docket, absent prior notice from the consumer that the information may be inaccurate").

Some courts in the Third Circuit have explicitly rejected this approach.  For instance, in *O'Brien v. Equifax Info. Servs.*, 382 F. Supp. 2d 733, 739 (E.D. Pa. 2005), the court, when asked to hold that reliance on a reputable source absolves a CRA from any liability under § 1681e(b), noted:

> The Third Circuit has not provided guidance as to what procedures are reasonable as a matter of law.  There is no reason to believe that the Third Circuit would adopt the Seventh Circuit's holding in *Sarver*, as interpreted by Equifax, that a credit reporting agency's procedures are reasonable as a matter of law whenever the credit reporting agency simply repeats information from a reputable source.  Under such a holding, there is no incentive for credit reporting agencies such as Equifax or Experian to ever change or improve their current procedures.

*Id. See also Cortez*, 617 F.3d at 710 ("Congress surely did not intentionally weave an exception into the fabric of the FCRA that would destroy its remedial scheme by allowing a credit reporting agency to escape responsibility for its carelessness whenever misleading information finds its way into a credit report through the agency of a third party."); *O'Connor v . Trans Union Corp.*, No. Civ. A. 97-4633, 1999 WL 773504, at *4 (E.D. Pa. Sept. 29, 1999) ("[T]he Third Circuit never held that in order to satisfy a prima facie case under § 1681e(b) of the FCRA for reporting inaccurate information, a plaintiff must show that the defendant had prior notice of the inaccuracies from the consumer.").

Much of this discussion is largely moot, at any rate, because in order to accept

DataQuick's position at this stage of the case, the Court would need to make several factual assumptions before any discovery has even been accomplished.  First, DataQuick seems to ask the Court to hold that Trans Union was inherently a reputable source, particularly in this case where it appears from the December 2010 tri-merge report[3] that Trans Union reported far more information on Mr. Dively than the other two sources.  In part, DataQuick relies on the logical fallacy that because Trans Union appeared to have more information about Mr. Dively than the other two sources, it was in a better position to attribute the tax liens to Mr. Dively; an equally plausible analysis before discovery is that Trans Union presented more information because it did far less verification than the other two CRAs, where, as here, Mr. Dively alleges that he informed Trans Union of the inaccuracies in the report about him in May 2010 and Trans Union failed to correct that report.

DataQuick would also have the Court hold that resellers should never have to reconcile differences in multiple reports because the burden would be far too great.  At this point, Mr. Dively has not had an opportunity to do any discovery as to what procedures DataQuick has in place to ensure accuracy in its reports, as to what DataQuick knew when it assembled his reports, as to how tax liens or other negative information, as opposed to neutral or positive information, can or should be verified, as to what, if anything, DataQuick knew about Trans Union's procedures, and as to how much it would actually cost to reconcile report discrepancies.  Thus, these arguments seem premature.

---

[3] DataQuick attaches this report, as well as a September 2010 report, to its motion. While the December 2010 report can likely be considered at this juncture as a document on which the Amended Complaint relies, the same probably cannot be said for the September report, which is not mentioned at all in the Amended Complaint.

Even *Henson*, a Seventh Circuit case and the only case on which DataQuick relies that was decided at the motion to dismiss stage, is not only not the law of this Circuit, but is readily distinguishable. In that case, the Seventh Circuit Court of Appeals held that "as a matter of law, a credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a court's Judgment Docket, absent prior notice from the consumer that the information may be inaccurate." *See Henson*, 29 F.3d at 285. However, that case involved reliance on a court's Judgment Docket, not on another CRA, and did not involve mistaken identity – in that case, a court had erroneously docketed a judgment against the plaintiff in a case in which he was a party. Here, DataQuick claims to have relied on Trans Union, and Trans Union made the mistake of ascribing tax liens to Mr. Dively despite accurate court documents ascribing the liens to someone else.

For all of these reasons, then, DataQuick's arguments fail, and Mr. Dively is at least entitled to request discovery on his claim against DataQuick. Under any of the three potential standards for evaluating the second prong of a § 1681e(b) claim proffered by the Third Circuit Court of Appeals, Mr. Dively has set forth sufficient allegations to state a claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Mr. Dively's Amended Complaint will be denied. An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE